Charles H. Carpenter
Carpenter Law Firm plc
210 North Higgins Avenue
Suite 336
Missoula, Montana 59802
Telephone: 406-543-0511
Fax: 406-258-0365
carpentc@carpenterlawfirmplc.com

*Attorney for Plaintiffs*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
## GREAT FALLS DIVISION

| | |
|---|---|
| THE CHIPPEWA CREE TRIBE OF THE ROCKY BOY'S RESERVATION, MONTANA, PLAIN GREEN, LLC, and FIRST AMERICAN CAPITAL RESOURCES, LLC, | Cause No. _____ |
| Plaintiffs, | |
| v. | **COMPLAINT** |
| | **JURY TRIAL** |
| ZACHARY ROBERTS, RICHARD LEE BROOME, GORDON JONES, and MARTIN MAZZARA, in their individual capacities, and DESTEL LLC, FRESH START MARKETING, LLC, AND ENCORE SERVICES, LLC, | |
| Defendants. | |

The Chippewa Cree Tribe of the Rocky Boys Reservation of Montana, Plain Green, LLC and First American Capital Resources, LLC ("Plaintiffs"), by and through their undersigned attorneys, as and for their Complaint against the above-captioned Defendants, state as follows:

## I.  PARTIES

1.      Plaintiff The Chippewa Cree Tribe of the Rocky Boy's Reservation of Montana (the "Tribe") is a duly incorporated and federally recognized Indian tribe with its Reservation located in Montana, and with its headquarters in Box Elder, Montana.  The Tribe, for the purposes of this litigation only, is a citizen of the state of Montana.

2.      Plain Green, LLC is a limited liability company wholly-owned by the Tribe, with its headquarters and its principal place of business located in Box Elder, Montana.  Plain Green, for purposes of this litigation only, is a citizen of the state of Montana.

3.      First American Capital Resources, LLC ("FACR") is a limited liability company wholly-owned by the Tribe, with its headquarters and its principal place of business located in Box Elder, Montana.  FACR, for purposes of this litigation only, is a citizen of the state of Montana.

4.      Upon information and belief, Defendant Zachary Roberts ("Roberts") is an adult individual who resides at 1409 Foothills Village Drive,

Henderson, NV 89012.  Upon information and belief, Roberts is a citizen of Nevada.  Upon information and belief, Roberts traveled to Box Elder, Montana on numerous occasions between January 2010 and July 2013 in order to conduct business with the Tribe and its lending enterprises.

5.      Upon information and belief, Defendant Richard Lee Broome ("Broome") is an adult individual who resides at 261 Francisco Street, Half Moon Bay, CA 94019.  Upon information and belief, Broome is a citizen of California. Upon information and belief, Broome traveled to Box Elder, Montana on numerous occasions between January 2010 and July 2013 in order to conduct business with the Tribe and its lending enterprises.

6.      Upon information and belief, Defendant Gordon Jones ("Jones") is an adult individual who resides at 2734 Woodflower Avenue, Henderson, NV 89052.  Upon information and belief, Jones is a citizen of Nevada. Upon information and belief, Jones traveled to Box Elder, Montana on numerous occasions between January 2010 and July 2013 in order to conduct business with the Tribe and its lending enterprises.

7.      Upon information and belief, Defendant Martin Mazzara ("Mazzara") is an adult individual who resides at 609 China Doll Place, Henderson, NV 89012.  Upon information and belief, Mazzara is a citizen of Nevada.  Upon information and belief, Mazzara traveled to Box Elder, Montana on

numerous occasions between January 2010 and July 2013 in order to conduct business with the Tribe and its lending enterprises.

8.      Upon information and belief, Defendant Encore Services, LLC ("Encore Services") is a limited liability company that is registered with the Nevada Department of State under business ID NV20111356476, with its headquarters and its principal place of business at 1291 Galleria Drive, Suite 210, Henderson, NV 89014.  Upon information and belief, Encore Services regularly its employees and principals to Box Elder, Montana for business in order to conduct business with the Tribe and its lending enterprises.

9.      Upon information and belief, the managing member of Encore Services is Roberts.  Upon information and belief, Encore Services members include only Roberts, Mazzara, Broome and Jones – none of whom are citizens of the state of Montana.

10.      Upon information and belief, Roberts is Encore Services' registered agent.

11.      Based upon information and belief, Encore Services is a shell corporation with no lawful or legitimate business purpose.

12.      Upon information and belief, Defendant DesTel LLC ("DesTel") is a limited liability company that is registered with the Nevada Department of State under business ID NV20111010607, with its headquarters and

its principal place of business located at 1291 Galleria Drive, Suite 210, Henderson, NV 89014.

13.     Upon information and belief, Broome is the managing member of DesTel.  Upon information and belief, DesTel's members include only Broome, Roberts, Mazzara, and Jones – none of whom are citizens of the state of Montana. Upon information and belief, DesTel regularly sent its employees and principals to Box Elder, Montana for business.

14.     Upon information and belief, Broome is DesTel's registered agent.

15.     Upon information and belief, Defendant Fresh Start Marketing, LLC ("Fresh Start Marketing") is a limited liability company that is registered with the Nevada Department of State under business ID NV20101839750, with its headquarters and its principal place of business at 1291 Galleria Drive, Suite 210, Henderson, NV 89014.   Upon information and belief, Fresh Start Marketing regularly sent its employees and principals to Box Elder, Montana for business.

16.     Upon information and belief, Roberts is the managing member of Fresh Start Marketing.  Upon information and belief, Fresh Start Marketing's members include only Roberts, Mazzara, Broome and Jones – none of whom are citizens of the state of Montana.

17.     Upon information and belief, Roberts is Fresh Start Marketing's registered agent.

18.     Based upon information and belief, Fresh Start Marketing is a shell corporation with no lawful or legitimate business purpose.

## II.  JURISDICTION

19.     This Court has original jurisdiction under 28 U.S.C. § 1332 because the Plaintiffs and Defendants are citizens of different states and the amount in controversy exceeds $75,000.00.

## III.  VENUE

20.     Venue is proper under 28 U.S.C. § 1391 because a substantial part of the events giving rise to Plaintiffs' claims occurred in the District of Montana.  The events and actions underlying this complaint occurred substantially in Hill and Chouteau Counties where Box Elder, Montana is located.

## IV.  FACTS

21.     On July 31, 2014, the Honorable Patrick J. Irvine, Arbitrator, issued a Final Award finding that Encore Services, LLC defrauded the Tribe and its lending enterprises of $1,181,128.79 through the actions of its principals and agents, Defendants Roberts, Broome, Mazzara, and Jones (hereinafter, the "Individual Defendants").  *See* Exhibit A.

22.    The Arbitrator further found that Encore Services, LLC, committed civil conspiracy, intentional and negligent misrepresentation, negligence, and breached their fiduciary duties through the actions the Individual Defendants.

23.    By way of background, the Tribe owns and operates commercial enterprises for the benefit of its people.

24.    These enterprises include Plain Green, an entity established to offer short-term installment loans to customers who are seeking to restore and rebuild their credit, and FACR, a payday lending operation which was also intended to benefit the members of the Tribe.

25.    Both FACR and Plain Green have become entangled with the Individual Defendants through the Individual Defendants' business interests, as well as the shell corporations owned by these individuals which do not appear to have any legitimate or lawful business purposes.

26.    The Tribe has lost millions of dollars because of these entanglements, Defendants' overtly fraudulent acts, and their clandestine and complex fraudulent scheme.

27.    The Individual Defendants have used their business interests to collude with at least three Tribal members to illegally funnel millions of dollars away from Plain Green, FACR and the Tribe.

**FACR**

28.     FACR is an entity that was organized by the Individual

Defendants in October 2010, but was underfunded and did not begin its operations

until May 2011.

29.     The Individual Defendants promised they would secure several

millions of dollars from investors for FACR, but actually obtained much less than

promised.

30.     Defendants have profited immensely from this enterprise and

have confiscated the Tribe's investments of over $3 million plus interest.

31.     The Individual Defendants were all affiliated with Encore

Service Corporation, LLC ("Encore Service Corporation").

32.     Encore Service Corporation is a limited liability company that

is registered with the Nevada Department of State under Business ID

NV20101745750.

33.     Encore Service Corporation maintains its principal place of

business at 1291 Galleria Drive, Suite 210, Henderson, NV 89014.

34.     Upon information and belief, the Individual Defendants had no

formal structure delineating between DesTel, Fresh Start Marketing, and Encore

Services (the "Defendant Business Entities"), Encore Service Corporation or the

companies' principals and managers.

35.     All of the Defendant Business Entities, which are shell corporations with no apparent lawful or legitimate business purpose, are registered at 1291 Galleria Drive, Henderson Nevada – in a building partially owned by another shell corporation set up and owned by Roberts.

36.     According to the sworn testimony of a principal of Encore, the Individual Defendants also had a verbal partnership agreement involving themselves, the Defendant Business Entities, and Encore Service Corporation.

37.     The Defendant Business Entities blatantly ignored the corporate form, commingled assets from their various entities and shell corporations, and, in effect, operated as one enterprise which appears to have been designed by the Individual Defendants to defraud the Tribe and its lending enterprises.

38.     On October 22, 2010, the Tribe and Encore Service Corporation entered into an agreement (the "Management Agreement") under which Encore Service Corporation and the Individual Defendants were to perform services for FACR.  *See* Ex. B.

39.     Under the Management Agreement, Encore Service Corporation was to receive 40% of the net revenues of the business as a management fee.  The Management Agreement was allegedly modified on May 4, 2011 so that Encore Service Corporation could receive a higher management fee of

49%.  *See id.*  An employee of the Tribe admitted in his sworn testimony that he forged the signature of the Chairman of FACR on this modified document.

40.     Under both versions of the Management Agreement, the Tribe was entitled to certain payments from FACR.

41.     The Management Agreement also imposed various responsibilities on Defendants through Encore Service Corporation.  For instance: "No contracts for the supply of goods and services to the Enterprise shall be entered into with parties affiliated with the Manager or its officers or directors unless . . . the contract terms are no less favorable for the Enterprise than could be obtained from a non-affiliated contractor."  *See id.* § 4.2.4.

42.     Additionally, the Management Agreement likewise imposed certain restrictions on the Defendants through Encore Service Corporation, including a prohibition against making payments to any Tribal official.  *See id.* § 8.4.

43.     The Individual Defendants, acting through Encore Service Corporation, promised and agreed to raise more than $16 million to fund FACR. The Individual Defendants fell significantly short of those funding promises and agreements.

44.     The Tribe, meanwhile, directly or through entities it controlled, invested in or loaned FACR more than $3 million.  The Tribe and Plain Green

relied on the Individual Defendants' advice and expertise in investing in or loaning FACR these funds.

45.     The Tribe has not seen any return on that funding, despite being promised by the Individual Defendants that the Tribe would receive large returns on its significant investments.

46.     At the direction of the Individual Defendants, FACR began official operations in May 2011, despite being severely underfunded.

47.     Defendants then used their management positions under the Management Agreement to cause FACR to enter into agreements with other companies controlled by the Individual Defendants.

48.     DesTel supposedly provided call-center services to FACR, handling customer service and collections.  DesTel has collected at least $5,469,087.24 from FACR.  Upon information and belief, the Individual Defendants caused $1 million of that money to be withdrawn from FACR, without the Tribe's permission, after August 2013, when FACR ceased originating loans and ceased nearly all business operations.

49.     Fresh Start Marketing was also supposed to provide marketing services for FACR.

50.     Fresh Start Marketing has not performed any such services for FACR.

51.     Fresh Start Marketing has withdrawn $27,320.00 from FACR, despite providing no services.

**Plain Green**

52.     On May 13, 2010, the Tribe founded another lending operation, originally named First American Asset Recovery,

53.     The Tribe changed that entity's name to Plain Green, LLC on March 11, 2011.

54.     Plain Green has an independent Board of Directors, which is chosen by the Tribe's Business Committee.

55.     Since March 2011, the Tribe has earned more than $25 million from Plain Green's operations.

56.     During this period, the Individual Defendants, through Encore Service Corporation, contended that the Management Agreement for FACR gave Encore Service Corporation the exclusive right to oversee all of the Tribe's lending businesses.  However, the Management Agreement contained no such exclusivity clause when Plain Green was first established.

57.     The Individual Defendants, through Encore Service Corporation, desired to obtain a portion of the profits of the Plain Green business, whether by lawful or unlawful means, at least in part because the Individuals Defendants failed in operating the FACR enterprise.

58.     Neither the Tribe's Business Committee nor Plain Green's Board of Directors ever agreed to give the Individual Defendants or their alleged businesses a role in Plain Green's operations.

59.     Nevertheless, the Individual Defendants, through shell corporation Encore Services, began collecting fees from Plain Green.

60.     The Individual Defendants made representations that they had a valid agreement to receive such fees (the "Fee Agreement").  *See* Ex. C.

61.     Neither the Tribe, through appropriate officials, nor Plain Green's Board of Directors ever agreed to enter into any such Fee Agreement.

62.     The Fee Agreement allegedly entitled Encore Services, LLC to 15% of Plain Green's gross revenues in perpetuity.

63.     Furthermore, Encore Services was supposed to provide various consulting services under the Fee Agreement.

64.     Encore Services charged Plain Green at least $3,523,471.96 for these alleged "services."

65.     These services were not valuable or even necessary.  In almost all instances, these services were also never even performed, despite the promises and assurances of the Individual Defendants.

66.     Upon information and belief, Defendant Encore Services is funded entirely by money that is unlawfully or improperly taken from Plain Green.

67.     Defendant Encore Services is not a legitimate or lawful business operation, and is merely a shell corporation used by the Individual Defendants to secretly siphon money from the Tribe.

68.     Furthermore, the Individual Defendants knew a significant portion of the money they obtained from Encore Services through the alleged Fee Agreement was not meant to compensate for services rendered, but rather was made so Encore Services could funnel secret payments to influential Tribal members.

### Ideal Consulting & Trio Consulting

69.     The Individual Defendants, through Encore Service Corporation, entered into separate agreements to make improper payments to at least three influential Tribal members.

70.     Two of those Tribal members previously served as senior officers, including as the CEO, of FACR and Plain Green ("the CEO Tribal Members").

71.     The third of those Tribal members, Dr. James Eastlick, served as Director of the Tribe's Health Clinic until 2013.

72.     While Eastlick has no experience in online lending, he was one of the few health care providers available to Tribal members and had significant influence in the community.

73.    Eastlick served as the Director of the Health Clinic until he was indicted by the U.S. Attorney's Office for the District of Montana for, *inter alia*, bribery and theft in connection with securing a contract with the Tribe for a construction company in which he had an interest.  He has entered a guilty plea, and is scheduled to be sentenced in the imminent future.[1]

74.    The CEO Tribal Members and Eastlick controlled a shell corporation called Ideal Consulting, LLC ("Ideal Consulting") which had no lawful or legitimate business purpose.  Each of the three owned one-third of Ideal Consulting.

75.    The Individual Defendants, through Encore Services, concocted an agreement ─ the "Joint Venture Agreement" ─ to provide a supposed basis to make secret payments to Ideal Consulting.  *See* Ex. D.

76.    Under the Joint Venture Agreement, Ideal Consulting was to receive 5 % of Plain Green's revenues — one-third of the 15% of Plain Green's revenues Encore Service Corporation claimed it was due under the Fee Agreement.

77.    The CEO Tribal Members were allegedly due payments under the Joint Venture Agreement as "key executives" of Plain Green.

78.    While payments were made to Ideal Consulting, they were not made according to the terms of the Joint Venture Agreement, which was never

---

[1]        *See* U.S. Dist. Ct. D. Mont., Docket 13-cr-00082-GF-BMM.

approved or authorized by the appropriate boards or Tribal members as the Individual Defendants later on claimed.

79.    Instead, one CEO Tribal Member approved payments from Plain Green to Encore Service Corporation, and thus indirectly to Ideal Consulting.

80.    Furthermore, while the Joint Venture Agreement is dated in 2011, it was actually created in late 2012 — well after Encore began funneling money to the CEO Tribal Members and Eastlick.

81.    Upon information and belief, the Joint Venture Agreement was created in 2012 and backdated to 2011 in an effort to conceal the improper nature of the payments to Ideal Consulting.

82.    The Individual Defendants, through Encore Services, also had a separate agreement to make secret payments to Eastlick through an entity called Trio Consulting.

83.    Trio Consulting is owned by Eastlick and possibly other officials, members, or employees of the Tribe.

84.    Trio Consulting serves no legitimate or lawful business purpose and was designed solely to receive fraudulent payments.

85.    Under the agreement between the Individual Defendants and Trio Consulting, the latter was to receive 2% of Plain Green's revenues from Encore Services.

86.     That money represented one-fifth of the 10% in Plain Green's revenues to which Encore Service Corporation claimed it was entitled after paying Ideal Consulting.

87.     Upon information and belief, Eastlick was paid in exchange for his influence with the Tribe.

88.     The agreements through which the Individual Defendants used Encore Services to funnel money to the CEO Tribal Members and Eastlick were not reviewed by legal counsel for Plain Green or the Tribe.

89.     In addition, these two agreements were never approved by Plain Green's Board of Directors or the appropriate representatives of the Tribe.

90.     Upon information and belief, the Defendants structured these agreements so as to conceal payments to the CEO Tribal Members and Eastlick to avoid objections by tribal members and others.

## COUNT I
## ACTUAL FRAUD, CONSTRUCTIVE FRAUD AND FRAUDULENT MISREPRESENTATION

91.     Plaintiffs repeat and reallege each of the allegations set forth hereinabove as though fully set forth herein.

92.     As described more fully above, Defendants have used a series of agreements, which were not approved by the Tribe or Plain Green's Board of Directors, to siphon millions of dollars from Plain Green and the Tribe.

93.   The Defendants have made a series of false representations, including, but not limited to, that:

a.   They had the exclusive right to operate the Tribe's lending enterprises;

b.   They had a valid Fee Agreement to collect 15% of Plain Green's revenues in perpetuity;

c.   They had a valid Joint Venture Agreement purporting to legitimize the payments to the conspirators and shell entities described above;

94.   Defendants also made misrepresentations by, among other things:

a.   Intentionally altering signature blocks on the agreements;

b.   Engaging in the forgery of signatures;

c.   Backdating documents and engaging in the late creation of documents; and

d.   Creating fake invoices.

95.   These representations were false, because:

a.   Defendants had no exclusive right to operate the Tribe's lending enterprises;

b.     Neither the Tribe's Business Committee nor Plain Green's Board of Directors approved the Fee Agreement or Joint Venture Agreement, and no meeting minutes exist which approve any of these fraudulent agreements;

c.     Defendants knew they were not collecting 15% of Plain Green's revenues solely for services, but rather used the money to funnel payments to individuals who colluded to bilk the Tribe and Plain Green;

d.     They were executed in a fraudulent manner – *i.e.*, through the use of forged signatures, backdated documents, and altered signature blocks.

96.     These false representations were material, as Defendants used them to siphon millions of dollars away from Plain Green.

97.     Defendants knew these representations were false.  Indeed, Defendants intentionally created and/or used the various shell entities to serve as a pass-through for payments to certain Tribal members and attempted to legitimize these payments by creating the Fee and Joint Venture Agreements.

98.     Defendants intended that Plaintiffs would act upon the misrepresentations in order to allow them to siphon money away from the Tribe's lending enterprises.

99.   Plaintiffs were ignorant of the fact that Defendants' representations were false.  The Tribe's Business Committee and Plain Green's Board of Directors were wholly unaware that Defendants were using money obtained from Plain Green to make improper payments to the CEO Tribal Members and Eastlick.

100.   Plaintiffs were lulled into trusting Defendants, and therefore relied on their misrepresentations.

101.   These misrepresentations are the proximate cause of injuries to Plaintiffs, as they have allowed Defendants to illegally funnel millions of dollars away from Plain Green and the Tribe.

WHEREFORE, Plaintiffs pray for judgment on the First Count of this Complaint:

      a.    For compensatory damages against Defendants of $13,102,302.99 and in such further amounts as may be determined at trial, together with interest thereon;

      b.    For punitive damages against Defendants as may be determined at trial;

      c.    For attorney fees;

      d.    For Plaintiffs' costs of this action; and

e.  Awarding Plaintiffs such further relief as this Court

deems just and proper.

**COUNT II**
**CIVIL CONSPIRACY**

102.  Plaintiffs repeat and reallege each of the allegations set forth

hereinabove as though fully set forth herein.

103.  The four Individual Defendants and three Defendant Business

Entities can all be counted as "persons" for legal purposes.

104.  All of the Defendants sought to accomplish a common

objective: to defraud Plaintiffs out of millions of dollars.

105.  As described above, and upon information and belief,

Defendants agreed and engaged in a course of action to accomplish this objective.

106.  As more fully detailed above, Defendants committed fraud by

using sham agreements to execute a fraudulent scheme for the purpose of

siphoning money from the Tribe and its lending entities to benefit themselves and

their criminal cohorts.

107.  Defendants carried out one or more unlawful overt acts in the

execution of this scheme, including:

a.  Using the mails and wires to execute their fraudulent

scheme;

b.  Intentionally altering signature blocks on agreements;

c.  Engaging in the forgery of signatures;

d.  Backdating documents and engaging in the late creation of documents;

e.  Engaging in bribery;

f.  Creating fake invoices; and

g.  Transferring fraudulent payments between various bank accounts.

108.  Plaintiffs were directly damaged by this conspiracy, as millions of dollars were siphoned away from Plain Green and the Tribe.

WHEREFORE, Plaintiffs pray for judgment on the Second Count of this Complaint:

a.  For compensatory damages against Defendants of $13,102,302.99 and in such further amounts as may be determined at trial, together with interest thereon;

b.  For punitive damages against Defendants as may be determined at trial;

c.  For attorney fees;

d.  For Plaintiffs' costs of this action; and

e.  Awarding Plaintiffs such further relief as this Court deems just and proper.

## COUNT III
## BREACH OF FIDUCIARY DUTY

109.   Plaintiffs repeat and reallege each of the allegations set forth hereinabove as though fully set forth herein.

Existence of a Fiduciary Relationship:

110.   Defendants were in a fiduciary relationship with Plaintiffs because, among other reasons:

a.   Defendants agreed to advise the Tribe and its lending entities in the facilitation of the FACR portfolio;

b.   Under the Management Agreement, Encore and the Individual Defendants owed a duty to Plaintiffs to properly act as the manager of the FACR business;

c.   The Individual Defendants promised to secure millions of dollars from investors for FACR, but utterly failed to do so;

d.   Per their managerial duties under the Management Agreement, Defendants entered into contracts with other companies owned by Broome, Mazzara, and Roberts purportedly to assist the FACR lending enterprise.

111.   Defendants also owed a fiduciary duty to Plaintiffs because the Tribe and Plain Green relied on Defendants' purported advice and expertise. Defendants were aware of such reliance.

112.   Because of these fiduciary relationships, Defendants owed a duty to the Plaintiffs to act in their best interests.

<u>Breach of a Fiduciary Duty</u>:

113.   Defendants breached this duty because, among other reasons:

    a.    Rather than securing millions of dollars for FACR as promised, Defendants let the FACR portfolio fall into a state of disrepair while they executed a fraudulent scheme to benefit themselves;

    b.    The Tribe invested over $3 million of its own funds into FACR (more than half of the total investment), but has not received any return on its investment.   Defendants, on the other hand, have profited immensely from this enterprise and have confiscated the Tribe's investment. Indeed, the Individual Defendants all admitted during the arbitration proceeding that the FACR portfolio is languishing and they will not be able to return the Tribe's investment.

114.   Defendants also breached this duty because, among other reasons:

a.   Encore Service Corporation, by and through the Individual Defendants, utterly failed to act prudently and appropriately as the manager of the FACR business, resulting in a substantial loss of the Tribe's investments;

b.   The contractual relationships with other companies entered into by Defendants purportedly on FACR's behalf were, in actuality, contracts with illegitimate business entities completely owned by the Individual Defendants and which served solely as the vehicle by which the Individual Defendants (and their aligned criminal cohorts) executed their scheme to defraud the Tribe and its lending entities.

115.   Defendants also breached this duty because, among other reasons:

a.   They improperly funneled money from Plain Green to themselves, the CEO Tribal Members, Eastlick and shell corporations Ideal Consulting and Trio Consulting;

b.   They made efforts to conceal these payments;

      c.       They did so to avoid detection and objection by tribal members and others; and

      d.       They kept much of the money for themselves at the expense of Plain Green and the Tribe.

<u>The Breach Resulted in Significant Injury to Plaintiffs</u>:

116.   Plaintiffs have been injured by this breach because, in relying on Defendants' advice and obligations under the Management Agreement, they invested and/or loaned FACR more than $3 million, but have not received any return on the money invested and/or loaned to FACR.

117.   Plaintiffs have further been injured by this breach because Defendants abused their fiduciary relationship to improperly funnel at least $13,102,302.99 from Plain Green and into their and their conspirators' coffers.

<u>Personal Liability</u>:

118.   Additionally, because the Individual Defendants directly participated in acts of fraud perpetrated against the Tribe and Plain Green and benefitted personally from this fraudulent scheme, they are not shielded from personal liability by the corporate veil or limited liability from their shell corporations.

119.   At all material times, the Individual Defendants had operational and managerial control over both Encore Services and the Defendant Business

Entities.  Indeed, the Individual Defendants served as the puppet masters pulling the strings behind the execution of the fraudulent scheme.

120.   Through their operational and managerial control, the Individual Defendants treated Encore Services and the Defendant Business Entities not as separate entities, but as one enterprise.  Although all the Defendant Business Entities withdrew substantial amounts of money from FACR, none of them provided any meaningful and legitimate business operations.  For example:

a.   Destel supposedly provided call center services to FACR for customer service and collections.  Even though FACR has engaged in little or no business activity since August 2013, Destel has withdrawn over $1 million from FACR during this time period without the Tribe's permission for a total of $5.5 million taken from the Tribe;

b.   Fresh Start Marketing purportedly provided marketing support services for FACR.  Fresh Start Marketing has received at least $27,320 from FACR, despite the fact that this entity does not appear to have provided any services for FACR;

c.   DialRight Software is an entity affiliated with a close associate of the Individual Defendants and Encore which

has received at least $110,000 from Plain Green for the alleged performance of unidentified "accounting services."

121.   Upon information and belief, the Individual Defendants have used their complete control over Encore Services and the Defendant Business Entities to commingle their financial assets, including the respective companies' revenues and expenses.

122.   Because the Individual Defendants used their positions with their shell corporations and the Defendant Business Entities to benefit themselves personally, commingled their finances, failed to maintain separate legal existences and committed various acts of fraud, and testified under oath that they had a verbal partnership agreement between themselves and all of their business entities, the corporate veil should be pierced and the Individual Defendants are subject to personal liability as members or controlling managers of the Defendant Business Entities.

WHEREFORE, Plaintiffs pray for relief on the Third Count of this Complaint:

    a.   For compensatory damages against Defendants of $13,102,302.98 and in such further amounts as may be determined at trial, together with interest thereon.

b.     For punitive damages against Defendants as may be determined at trial;

c.     For attorney fees;

d.     For Plaintiffs costs of this action; and

e.     Awarding Plaintiffs such further relief as this Court deems just and appropriate.

<u>**COUNT IV**</u>
<u>**NEGLIGENT MISREPRESENTATION**</u>

123.   Plaintiffs repeat and reallege each of the allegations set forth hereinabove as though fully set forth herein.

124.   Defendants have made a series of representations, including:

a.  That they had the exclusive right to operate the Tribe's lending enterprises;

b.  That they had a valid Fee Agreement to collect 15% of Plain Green's revenues in perpetuity;

c.  They had a valid Joint Venture Agreement purporting to legitimize the payments to the conspirators and shell entities described above;

125.   These representations were false, because:

a.  Defendants had no exclusive right to operate the Tribe's lending enterprises;

b.  Defendants knew the Fee and Joint Venture Agreements were premised upon concealment and hiding the truth;

c.  Neither the Tribe's Business Committee nor Plain Green's Board of Directors approved the Fee Agreement.

126.   These false representations were material, as Defendants used them to siphon millions of dollars away from Plaintiffs.

127.   Regardless of Defendants' actual beliefs, they made these representations without any reasonable ground for believing them to be true. Instead, Defendants affirmatively knew they were using these funds to perpetrate a fraudulent scheme.  In fact, Defendants did not deny at the Arbitration that they used these misrepresentations to make payments to the above-described conflicted individuals and their criminal cohorts through the shell corporations.

128.   Defendants intended that Plaintiffs would act upon the misrepresentations so that they would have access to the profits from the Tribe's lending enterprises.

129.   Plaintiffs were ignorant of the fact that Defendants representations were false, and had no reason to believe otherwise.  The Tribe's Business Committee and Plain Green's Board of Directors were wholly unaware that Defendants were using money obtained from Plain Green to make improper payments to the CEO Tribal Members and Eastlick.

130.    Plaintiffs relied upon and trusted Defendants' representations because Defendants had acted as advisors.

131.    These misrepresentations are the proximate cause of injuries to Plaintiffs, as they have allowed Defendants to illegally funnel millions of dollars from Plain Green and the Tribe.

WHEREFORE, Plaintiffs pray for judgment on the Fourth Count of this Complaint:

a.  For compensatory damages against Defendants of $13,102,302.99 and in such further amounts as may be determined at trial, together with interest thereon;

b.  For Plaintiffs' costs of this action; and

c.  Awarding Plaintiffs such further relief as this Court deems just and proper.

## COUNT V
## NEGLIGENCE

1.  Plaintiffs repeat and reallege each of the allegations set forth hereinabove as though fully set forth herein.

2.  Defendants had a duty as manager of the FACR lending enterprise not to misrepresent facts.

3.  Defendants also had a duty in their role as advisors not to make any misrepresentations.

4.  As discussed more fully above, Defendants made a series of misrepresentations about their alleged exclusive right to oversee the Tribe's lending enterprises, the Fee and Joint Venture Agreements, and how the money they withdrew from Plain Green would be used.

5.  Because of these misrepresentations, Defendants breached the duty of care that they owe to Plaintiffs.

6.  This breach caused damages to Plaintiffs, as the Plaintiffs lost millions of dollars because of the Defendants' actions or inactions.

WHEREFORE, Plaintiffs pray for relief on the Fifth Count of this Complaint:

a.  For compensatory damages against Defendants of $13,102,302.99 and in such further amounts as may be determined at trial, together with interest thereon.

b.  For Plaintiffs costs of this action; and

c.  Awarding Plaintiffs such further relief as this Court deems just and appropriate.

## COUNT VI
## CONVERSION

7.  Plaintiffs repeat and reallege each of the allegations set forth hereinabove as though fully set forth herein.

8.  Plaintiffs had a right to own and possess the money Defendants siphoned off from Plain Green through the fraudulent schemes described more fully above.

9.  That money was converted by Defendants through their schemes to be used for their own benefit.

10.  Plaintiffs suffered damages as a result, as millions of dollars were illegally funneled away from Plain Green and the Tribe.

WHEREFORE, Plaintiffs pray for relief on the Sixth Count of this Complaint:

a.  For compensatory damages against Defendants of $13,102,302.99 and in such further amounts as may be determined at trial, together with interest thereon.

b.  For punitive damages;

c.  For Plaintiffs costs of this action; and;

d.  Awarding Plaintiffs such further relief as this Court deems just and appropriate.

## COUNT VII
## UNJUST ENRICHMENT

11.  Plaintiffs repeat and reallege each of the allegations set forth hereinabove as though fully set forth herein.

12.     As discussed in detail above, there was no valid contract entitling Defendants to money from Plain Green because the Fee Agreement was rooted in fraud and was utilized to perpetrate a complex fraudulent scheme.

        a.     Indeed, the Arbitrator expressly found that the Fee Agreement is a voidable contract because it was rooted in fraud, and awarded Plaintiffs over $1 million in damages as a result.  *See* Ex. A.

13.     Despite not being a valid contract, Defendants benefitted from the Fee Agreement since they took advantage of Plaintiffs and their prior relationship with the Plaintiffs in order to execute their fraudulent scheme.

14.     Defendants engaged in fraudulent misconduct by knowingly deceiving Plaintiffs through the methods described above.

15.     Defendants were unjustly enriched because they were able to take millions of dollars from the Tribe and Plain Green.

16.     Defendants continue to unjustly retain money they realized through their misconduct.

WHEREFORE, Plaintiffs pray for relief on the Seventh Count of this Complaint:

a. For compensatory damages against Defendants of $13,102,302.99 and in such further amounts as may be determined at trial, together with interest thereon;

b. For punitive damages;

c. For Plaintiffs costs of this action; and;

d. Awarding Plaintiffs such further relief as this Court deems just and appropriate.

Respectfully Submitted,

/s/ Charles H. Carpenter

_____

Charles H. Carpenter
Carpenter Law Firm PLC
210 North Higgins Avenue
Suite 336
Missoula, Montana 59802
Telephone: 406-543-0511
Fax: 406-258-0365
carpentc@carpenterlawfirmplc.com

*Attorney for Plaintiffs*

Dated:  August 28, 2014